IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-cv-00147-FL

| CHERYL L. ENGLEMAN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| CUMBERLAND COUNTY, JUDGE GEORGE FRANKS, EARL R. BUTLER, DALLAS TYREE, GREG MORRISON, DEPUTY CROMARTIE, DEPUTY HYDE, and DEPUTY MCDANIEL, | ) | |
| Defendants. | ) | |

This matter comes before the court on the motion to dismiss of defendants Cumberland County, Earl R. Butler, Dallas Tyree, Greg Morrison, Deputy Cromartie, Deputy Hyde, and Deputy McDaniel (DE # 16) and the motion to dismiss of Judge George Franks (DE # 20). The issues have been fully briefed and are ripe for ruling. For the reasons stated below, the court will grant in part and deny in part the motion to dismiss of defendants Cumberland County, Earl R. Butler, Dallas Tyree, Greg Morrison, Deputy Cromartie, Deputy Hyde, and Deputy McDaniel and grant the motion to dismiss of Judge George Franks.

**BACKGROUND**

On March 27, 2012, after her application to proceed *in forma pauperis* was denied, the *pro se* plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 alleging that defendants, in both their official and individual capacities, violated the constitutional rights of her and her minor children,[1] specifically their Fourth Amendment right to be free from unreasonable searches and their Fifth and

---

[1] The court notes that to the extent plaintiff seeks relief on behalf of her minor children, she has failed to name them as plaintiffs in this action.

Fourteenth Amendment rights to due process. Plaintiff seeks compensatory damages in the amount of $500,000.00 and punitive damages in the amount of $500,000.00. All defendants have filed motions to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. Specifically, Cumberland County, Earl R. Butler, Dallas Tyree, Greg Morrison, Deputy Cromartie, Deputy Hyde, and Deputy McDaniel assert that the court lacks both subject matter jurisdiction and personal jurisdiction and that the complaint fails to state a claim upon which relief can be granted. Judge Franks also asserts these grounds for dismissal and additionally contends that the complaint against him must be dismissed for insufficient service of process.

The relevant facts, as alleged by plaintiff, are as follows. On July 19, 2011, plaintiff appeared in a divorce proceeding in Cumberland County District Court before Judge George Franks. During the course of the proceeding, Judge Franks issued an "instanter subpoena"[2] for plaintiff's boyfriend, Bradley W. Ishman, to be served at three possible locations, one of which was plaintiff's residence, and ordered that Ishman be subdued "at all costs." Deputy Cromartie, Deputy Hyde, and Deputy McDaniel (the "deputy defendants") proceeded to plaintiff's residence to attempt to serve Ishman and bring him before the court.

When the deputy defendants arrived at plaintiff's residence, they knocked on the front door, but were denied entrance by a 15-year-old babysitter, who was at the residence watching plaintiff's children of ages 7 and 11. Plaintiff had instructed the babysitter to not open the door for any person, including law enforcement officers without a warrant. After being denied entry by the babysitter, one of the deputy defendants, who plaintiff believes was Deputy Hyde, entered plaintiff's back yard

---

[2] Defendants refer to Judge Franks's order as an "instanter capias subpoena." Defs.' Mem. in Supp. at 2 n.1. North Carolina law recognizes a common law writ of instanter capias ad testificandum, which may issue to compel the attendance of a subpoenaed witness who has failed to appear. See State v. Rigsbee, 285 N.C. 708, 712, 208 S.E.2d 656, 659 (1974). Furthermore, an order for arrest may issue when "[t]he common-law writ of capias has heretofore been issuable." N.C. Gen. Stat. § 15A-305.

2

by scaling a six-foot security fence, looked through windows, and attempted to enter plaintiff's residence through the back door. Another deputy defendant attempted to gain entry by manually lifting open the garage doors. After approximately ten minutes, the babysitter instructed one of the deputy defendants, who plaintiff believes was Deputy Cromartie, that he should go to the residence next door and speak with her grandmother.

The grandmother declined to assist the deputy defendants without seeing proof of a warrant. A deputy defendant, who plaintiff believes was Deputy Cromartie, allegedly held up some papers, which plaintiff believes was the subpoena for Ishman, and said he had a warrant, but would not let the grandmother examine the papers. After some discussion, the grandmother asked the babysitter to open the door so that plaintiff's children, who were distressed and crying, could be allowed to leave plaintiff's residence. The babysitter complied by opening the door to allow the children to leave, and the defendant deputies forcibly entered plaintiff's residence without permission. The defendant deputies searched the residence for Ishman and looked through storage containers, drawers, sealed boxes, and mail. The deputy defendants also questioned the babysitter and plaintiff's children regarding Ishman's whereabouts. Failing to find Ishman, the deputy defendants told the grandmother and babysitter that "we didn't see you, and you didn't see us" and left.

Plaintiff subsequently went to the Cumberland County sheriff's office and spoke with defendant Greg Morrison, Sergeant in Command, and defendant Dallas Tyree, Lieutenant in Command. She requested the names of the deputies involved in and the records associated with the incident, and was told they would attempt to provide the requested information if possible. Plaintiff asked to speak with Sheriff Butler, but her request was denied. Morrison told plaintiff that the deputy defendants were not legally allowed to enter her back yard, and both Morrison and Tyree stated that the deputy defendants were acting on the order of Judge Franks when they entered her

residence. Plaintiff also requested a copy of the instanter subpoena and was provided a copy, but it did not contain the "notes/orders" given to the deputy defendants. Plaintiff indicated she wanted to make a formal complaint and was told that she would be contacted, but she was never contacted and received no cooperation from the sheriff's department in her further attempts to file a formal complaint.

**COURT'S DISCUSSION**

**I. Standard of Review**

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When the Rule 12(b)(1) motion attacks the complaint as failing to state facts upon which subject matter jurisdiction may be based, the facts in the complaint are assumed to be true and the plaintiff is afforded the same protections he or she would receive under a Rule 12(b)(6) motion. Adams, 697 F.2d at 1219. The Rule 12(b)(1) motion may alternatively attack the existence of subject matter jurisdiction in fact, apart from the complaint. Id. This type of attack is used when a court's limited jurisdiction precludes hearing the case brought. Id. Since the court's power to hear the case is at issue in a Rule 12(b)(1) motion, the court is free to weigh the evidence to determine the existence of jurisdiction. Id.

Rules 12(b)(2) and (5) provide for dismissal on the basis of lack of personal jurisdiction and insufficient service of process. For the purposes of a Rule 12(b)(2) motion, the court must construe "all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). When considering a motion to dismiss for insufficient service of process

4

Case 5:12-cv-00147-FL   Document 37   Filed 01/15/13   Page 4 of 16

under Rule 12(b)(5), the plaintiff bears the burden of establishing that proper service of process was performed, and that the process itself was proper. Brissett v. Freemont Inv. & Loan Corp., No. 4:08–CV–77–F, 2010 WL 686547 at *2 (E.D.N.C. Feb. 24, 2010) (citing Elkins v. Broome, 213 F.R.D. 273, 275 (M.D.N.C. 2003)).

Rule 12(b)(6) provides for dismissal for failure to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement [,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

**II. Analysis**

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. To prevail on a § 1983 claim, plaintiff must show (1) that she was deprived of a federal statutory or constitutional right; and (2) that the deprivation was committed under color of state law. American Mfrs. Mut. Ins. Co. v.

5

Sullivan, 526 U.S. 40, 49–50 (1999).  Therefore, in examining a § 1983 claim, the court must first "isolate the precise constitutional violation with which [the defendant] is charged."  Baker v. McCollan, 443 U.S. 137, 140 (1979).

In her complaint, plaintiff alleges violations of her Fourth Amendment right to be free from unreasonable searches and her Fifth and Fourteenth Amendment right to due process.  However, her due process claim appears to simply restate her Fourth Amendment claim, and the crux of the factual allegations support such a reading of her complaint.  See Graham v. Connor, 490 U.S. 386, 394 (1989) (rejecting lower court's application of substantive due process analysis to an excessive force claim where the claim was more properly analyzed under the Fourth Amendment).  Accordingly, the court finds that the conduct alleged here is most accurately characterized as implicating the Fourth Amendment and now considers whether plaintiff has sufficiently alleged a deprivation of her rights thereunder.

"It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable."  Payton v. New York, 445 U.S. 573, 586 (1980).  "[T]he Fourth Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."  Id. at 590.  Where the residence is that of a third party, "not only must the officers have probable cause to believe the person named in the arrest warrant is on the premises of the third person, but there must also exist an appropriate exception to the warrant requirement, e.g., consent of the owner or occupier of a dwelling unit or exigent circumstances."  Wallace v. King, 626 F.2d 1157, 1161 (4th Cir.1980); see also Steagald v. United States, 451 U.S. 204, 216 (holding that a search warrant is required to enter the home of a third party to make an arrest absent consent or exigent circumstances).  Exigent circumstances vary from case to case, but relevant considerations include "(1) the degree of urgency

involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband." United States v. Turner, 650 F.2d 526, 528 (4th Cir. 1981) (citing Rubin, 474 F.2d 262, 268-69 (3d Cir. 1973)). "Reasonable or probable cause to believe that a person for whom an arrest warrant has been issued is on the premises, standing alone, is not sufficient." Id.

Plaintiff alleges that Ishman did not reside in her home and that the deputy defendants entered her home without a warrant and without consent in an attempt to serve an instanter subpoena on Ishman and bring him before Judge Franks. There is no indication in the complaint that Judge Franks issued a search warrant for plaintiff's home, and the complaint alleges that when asked to produce a warrant, the deputy defendants failed to do so. Furthermore, even if the instanter capias subpoena was construed as an arrest warrant, the allegations of the complaint do not indicate that the deputy defendants had consent to enter plaintiff's residence or that exigent circumstances existed, as required where the subject of an arrest warrant is believed to be in the residence of a third person. See Guerrero v. Deane, No. 1:09cv1313, 2010 WL 670089, at *9 (E.D. Va. Feb. 19, 2010) (finding that plaintiff sufficiently stated a claim for unreasonable search under the Fourth Amendment where officers entered third party residence to serve a truancy summons without a warrant or consent and the complaint contained no allegations supporting a finding of exigent circumstances). Thus, construing the allegations in the complaint in the light most favorable to plaintiff, the court finds that she has adequately pled a deprivation of her Fourth Amendment right to be free from unreasonable searches. Further, there is no dispute that the alleged deprivation was committed under color of state law. See Brown v. Winders, No. 5:11-CV-176-FL, 2011 WL

7

4828840, at *3 (E.D.N.C. Oct. 11, 2011) ("Acts performed by a law enforcement officer in his or her capacity as an officer, even if illegal or not authorized by state law, are considered to have been taken under color of law.").

Having determined that plaintiff has sufficiently alleged the prerequisites for a claim under § 1983, the court will turn to the defenses raised in the motions to dismiss.

**A.     Motion to Dismiss of Defendants Cumberland County, Earl R. Butler, Dallas Tyree, Greg Morrison, Deputy Cromartie, Deputy Hyde, and Deputy McDaniel**

**1.     Cumberland County**

Plaintiff contends that the county is liable under § 1983 because it failed to train, supervise, or discipline the deputy defendants. The county argues that it is not a proper defendant, because it has no policymaking authority over the sheriff's department. Plaintiff concedes that the county is not directly responsible for the sheriff's department, but maintains that the county is liable because it provides funding to the sheriff's department.

"[A] local government is liable under § 1983 for its policies that cause constitutional torts." McMillian v. Monroe County, 520 U.S. 781, 784 (1997). However, "municipal liability under 42 U.S.C. § 1983 is limited to deprivations of federally protected rights caused by action taken 'pursuant to official municipal policy of some nature . . . .'" Pembaur v. City of Cincinnati, 475 U.S. 469, 471 (1986) (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978)). "[A] municipality cannot be held liable solely because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691.

Plaintiff's allegations of a failure by the county to train, supervise, or discipline the deputy defendants are insufficient to establish liability against the county, because it has no policymaking

authority over the sheriff's department. "Whether a county has final policymaking authority in a specific area is a question of state law." Parker v. Bladen County, 583 F. Supp. 2d 736, 739 (E.D.N.C. 2008) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988)). Under North Carolina law, "the sheriff, not the county encompassing his jurisdiction, has final policymaking authority over hiring, supervising, and discharging personnel in the sheriff's office." Id. (citing Worrell v. Bedsole, No. 95-2816, 1997 WL 153830, at *5 (4th Cir. Apr. 3, 1997) (additional citations omitted)). Furthermore, the Supreme Court has rejected plaintiff's argument that the funding of a sheriff's department by a county necessarily equates to control over the sheriff's department. See McMillian, 520 U.S. at 791-92 (holding that the sheriff was a policymaker for the state and not the county, despite the county's provision of resources to the sheriff and payment of sheriff's salary). Plaintiff has alleged no facts on which liability could be attributed to the county. Accordingly, the claims against the county will be dismissed.

  **2.  Earl R. Butler, Dallas Tyree, and Greg Morrison - Individual Capacity Claims**

Plaintiff contends that Butler, Tyree, and Morrison (the "supervisor defendants") are liable under § 1983 because they failed to train or supervise the deputy defendants regarding the execution of instanter subpoenas and subsequently failed to discipline the deputy defendants for their unconstitutional acts. The supervisor defendants argue that they are entitled to absolute quasi-judicial immunity or, alternatively, that plaintiff has failed to sufficiently plead supervisor liability.

  **a.  Absolute Quasi-Judicial Immunity**

"Judges performing judicial acts within their jurisdiction are entitled to absolute immunity from civil liability claims." In re Mills, 287 F. App'x 273, 279 (4th Cir. July 29, 2008) (citing Mireles v. Waco, 502 U.S. 9, 11-12 (1991)). Quasi-judicial immunity may extend to a judge's subordinates for "functions that are more administrative in character [that] have been undertaken

9

pursuant to the [judge's] explicit direction." Id. (quoting Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1992)). Many courts have recognized that an official executing a facially valid court order enjoys absolute immunity from suit in connection therewith. See, e.g., Valdez v. City & County of Denver, 878 F.2d 1285, 1288 (10th Cir. 1989). However, the Fourth Circuit has recognized a distinction between "protection from liability simply for following a judge's order and protection from liability for carrying out a judge's order in a manner not sanctioned by the judge." Mills, 287 F. App'x at 279 (citations omitted).

Here, plaintiff alleges that Judge Franks issued an instanter subpoena for Ishman and that the serving officers were to attempt to serve Ishman and bring him before the judge "at all costs." Compl. at 5-6, 26. This court declines to infer from these allegations that Judge Franks directed the deputy defendants to violate the Constitution in order to carry out his order; in other words, it is not evident that the deputy defendants' warrantless entry into plaintiff's residence was sanctioned by Judge Franks. See Mills, 287 F. App'x at 279 (citing Martin v. Bd. of County Comm'rs, 909 F.2d 402, 405 (10th Cir. 1990) ("[A] judicial warrant contains an implicit directive that the arrest and subsequent detention be carried out in a lawful manner.")). The Fourth Circuit's decision in Mills is instructive here.

The Mills court declined to apply the defense of absolute quasi-judicial immunity, because the alleged unconstitutional execution of the judge's order was not specifically authorized by the judge who issued the warrant. See Mills, 287 F. App'x at 279-80 (reasoning that complaint did not seek to hold officers liable for a quasi-judicial decision, but rather for defendants' decision of how to execute the warrant). Defendants' attempt to distinguish the Fourth Circuit's decision in Mills on the grounds that it involved a claim of excessive force against officers executing an order is not persuasive. Defs.' Mem. in Supp. at 4 n.3. The court finds nothing in Mills to indicate that the type

10

of constitutional violation alleged is determinative of whether an officer is entitled to absolute quasi-judicial immunity. Rather, the Mills court found determinative that "the alleged unconstitutional execution of the order was not specifically authorized by the judicial officer who issued the warrant." Mills, 287 F. App'x at 279. Here, it is not clear from the complaint whether the manner in which the deputy defendants executed the judge's order was sanctioned by the judge. Accordingly, the court finds that the supervisor defendants are not entitled to dismissal at this time based on absolute quasi-judicial immunity.

### b. Supervisor Liability

The supervisor defendants next contend that plaintiff has failed to sufficiently plead supervisor liability. There is no vicarious liability in § 1983 actions; "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). A supervisor may be liable for the actions of a subordinate only if

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and
>
> (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). A plaintiff "assumes a heavy burden of proof in establishing deliberate indifference." Id.

For a failure to train to rise to the level of deliberate indifference requires that (1) inadequately trained employees engaged in a pattern of unconstitutional conduct or (2) the violation

11

of a federal right is a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Hill v. Robeson County, N.C., 733 F. Supp. 2d 676, 687 (E.D.N.C. 2010) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 407-09 (1997)). "Generally, a failure to supervise gives rise to § 1983 liability . . . only in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to the supervisory personnel." Wellington v. Daniels, 717 F.2d 932, 936 (4th Cir. 1983). Likewise, "[i]t is rare for municipal liability to attach based on the failure to discipline . . . for a single incident." Jones v. Houston, No. 4:08-CV-121-F, 2010 WL 3835147, at *8 (E.D.N.C. Sept. 28, 2010) (citations omitted).

Here, plaintiff has made no allegation that the deputy defendants' actions were part of a pattern of unconstitutional conduct. Furthermore, plaintiff alleged that Morrison told her that he had only seen two or three instanter subpoenas issued over his entire career, which is indicative of an exceptional occurrence and not a recurring situation where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989). Accordingly, the allegations in the complaint are insufficient to plead supervisor liability for failure to train, supervise, or discipline the deputy defendants, and those claims will be dismissed.

    **3.    Deputy Cromartie, Deputy Hyde, and Deputy McDaniel - Individual Capacity Claims**

Plaintiff contends that the deputy defendants violated her Fourth Amendment right to be free from unreasonable searches when they entered her home without a search warrant or consent in an attempt to execute an instanter subpoena issued by Judge Franks. The deputy defendants contend

12

that they are entitled to absolute quasi-judicial immunity, because they were simply executing a judge's order. For the same reasons stated with respect to the supervisor defendants, the court will not dismiss plaintiff's claim against the deputy defendants based on absolute quasi-judicial immunity at this time. As explained above, it is not evident from the complaint that the deputy defendants' warrantless entry into plaintiff's residence was sanctioned by Judge Franks. See Mills, 287 F. App'x at 279; Levine v. Lawrence, No. 03-CV-1694, 2005 WL 1412143, at *10 (E.D.N.Y. June 15, 2005) ("[W]here it is unclear from the record whether all of a court officer's challenged conduct, or the manner in which he acted was 'done under the trial judge's authority and direction,' the officer is not entitled to absolute quasi-judicial immunity.") (citation omitted). Accordingly, the court will deny the motion to dismiss the individual capacity claims as to the deputy defendants.[3]

### 4. Official Capacity Claims Against All Defendants

Plaintiff has alleged official capacity claims against each defendant. A plaintiff's claim against a government official in his official capacity is treated as a claim against the government entity of which the official is an agent. See Kentucky v. Graham, 473 U.S. 159, 165 (1985)("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). To establish liability against the entity, a plaintiff must show that the deprivation was the result of municipal policy or custom. Jones, 2010 WL 3835147, at *6 (citing Monell, 436 U.S. at 691). "A policy or custom for which a local government entity may be held liable may arise in four ways: (1) through an express policy, such as written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice

---

[3] Defendants raised qualified immunity as a defense in their answer, but did not assert or brief the issue in the instant motion to dismiss. Accordingly, the court will not consider the issue at this time.

that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)).

Here, plaintiff has alleged a single incident of misconduct, and there is nothing in the complaint that would support a finding that the conduct was attributable to a policy or custom of the sheriff or county or the decision of a policymaker. Furthermore, the court has already rejected plaintiff's theories of liability based on an omission, that is a failure to train, supervise, or discipline the deputy defendants. Accordingly, plaintiff's official capacity claims against the defendants fail as a matter of law.

In sum, the motion to dismiss will be granted as to Cumberland County, Earl R. Butler, Dallas Tyree, and Greg Morrison, and plaintiff will be allowed to proceed only as to the individual capacity claims against Deputy Cromartie, Deputy Hyde, and Deputy McDaniel.

**B.      Motion to Dismiss of Judge George Franks**

Judge Franks asserts that he is entitled to dismissal based on several provisions of Rule 12. The court need only reach the issue of absolute judicial immunity, which is dispositive and requires dismissal of the claims against Judge Franks.

"[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." Mireles, 502 U.S. at 11-12 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Therefore, "[judicial] immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. (internal citations omitted). The Supreme Court has made clear that "whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.,* whether it

14

is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." Id. (citing Stump v. Sparkman, 435 U.S. 349, 362 (1978); Forrester v. White, 484 U.S. 219, 227-229 (1988)).

Here, plaintiff contends that the issuance of the instanter subpoena by Judge Franks was a nonjudicial or administrative act. Yet, courts have consistently held that a judge's act of ordering a person to be brought before the court in connection with a judicial proceeding is a protected judicial act. See, e.g., Mireles, 502 U.S. at 12 (concluding that judge's order to bring attorney to court for purposes of a pending case was a judicial act); Dean v. DeShazo, No. 3-07-cv-0698-B, 2007 WL 2890204, at *2 (N.D. Tex. Oct. 3, 2007) (concluding that a judge was acting within the scope of her authority in issuing a capias warrant to secure the plaintiff's appearance at a proceeding in her court and was entitled to absolute judicial immunity); Souther v. Reid, 101 F. Supp. 806, 807 (E.D. Va. 1951) (concluding that judicial immunity applied to allegedly unauthorized issuance of capias). Furthermore, "a judge 'will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'" Mireles, 502 U.S. at 13 (citation omitted) (concluding that a judge's direction to police officers to carry out a judicial order with excessive force was insufficient to convert the act to a nonjudicial one).

The allegations of the complaint also fail to indicate that Judge Franks acted in the absence of jurisdiction. To illustrate when a judge acts "in the clear absence of all jurisdiction," the Supreme Court provided the following example: "if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune." Stump, 435 U.S. at 357 n.7 (citing Bradley v. Fisher, 13 Wall. 335, 352

15

(1872)). Here, Judge Franks issued an order to bring a person before the court to testify in a proceeding pending before him, which is not an act taken "in the clear absence of all jurisdiction." See Mireles, 502 U.S. at 13 ("[A]n action–taken in the very aid of the judge's jurisdiction over a matter before him–cannot be said to have been taken in the absence of jurisdiction."). Accordingly, Judge Franks has absolute immunity from suit and will be dismissed from this action.

## CONCLUSION

Based on the foregoing, the court rules as follows: (1) the motion to dismiss of defendants Cumberland County, Earl R. Butler, Dallas Tyree, Greg Morrison, Deputy Cromartie, Deputy Hyde, and Deputy McDaniel (DE # 16) is GRANTED as to all claims against Cumberland County, Earl R. Butler, Dallas Tyree, Greg Morrison and as to the official capacity claims against Deputy Cromartie, Deputy Hyde, and Deputy McDaniel and is DENIED as to the individual capacity claims against Deputy Cromartie, Deputy Hyde, and Deputy McDaniel; and (2) the motion to dismiss of Judge George Franks (DE # 20) is GRANTED.

Furthermore, the court previously stayed its May 8, 2012 Initial Order Regarding Planning and Scheduling (DE # 27) pending ruling on the motions to dismiss. The stay is now lifted and the remaining parties shall conduct the Rule 26(f) conference on or before twenty-one (21) days from the entry of this order. In all other regards, the Initial Order remains in effect and, the parties shall refer to it for further planning and scheduling deadlines and information.

SO ORDERED, this 15th day of January, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge